IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ALBANY DIVISION

| | |
|---|---|
| JOSEPH TIGER D. PRINCE,<br><br>                  Petitioner<br><br>VS.<br><br>MICHELLE MARTIN,<br><br>                  Respondent | NO. 1:05-CV-55 (WLS)<br><br>PROCEEDING UNDER 28 U.S.C. §2254<br>BEFORE THE U.S. MAGISTRATE JUDGE |

## RECOMMENDATION TO DENY HABEAS CORPUS PETITION

Petitioner JOSEPH TIGER D. PRINCE filed this § 2254 action challenging his 1999 Dougherty County conviction resulting from a jury trial for malice murder.

On October 12, 1995, a grand jury of Dougherty County returned a true bill of indictment against Joseph Tiger Prince, ("Petitioner"), charging him with malice murder (count 1) and recidivism (count 2). (Respondent's ["Resp."] Exhibit ["Ex."] 4, pp. 78-79). Petitioner appeared with counsel in the Dougherty County Superior Court on January 11, 1999, for a jury trial. (Resp. Ex. 5, p. 269). On January 13, 1999, the jury returned a verdict of guilty against him on count 1 of the indictment. (Resp. Ex. 6, p. 884). Thereafter, the trial court sentenced petitioner as a recidivist to life in prison without parole on count 1. (Resp. Ex. 6, p. 771-772, 885).

Petitioner Prince then filed a direct appeal in the Georgia Supreme Court. In his appeal, he presented four enumerations of error, including allegations of ineffective assistance of trial counsel. (Resp. Ex. 6, pp. 987-992). On October 20, 2003, the Supreme Court affirmed petitioner's conviction and sentence. *Prince v. State*, 277 Ga. 230, 587 S.E.2d 637 (2003). (Resp. Ex. 7).

On February 17, 2004, petitioner filed a state habeas corpus petition challenging his conviction. (Resp. Ex. 1). After an evidentiary hearing on April 13, 2004, the state habeas corpus court denied relief in an order filed September 23, 2004. (Resp. Ex. 2, 4-6). The Georgia Supreme Court denied petitioner's application for a certificate of probable cause to appeal in an order entered March 28, 2005. (Resp. Ex. 3). On or about April 21, 2005, petitioner executed the instant petition.

28 U.S.C. § 2254(d), as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), "places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court." *Williams v. Taylor*, 529 U.S. 362, 412 (2000). This new standard "forecloses relief unless" the state court's merits adjudication of the constitutional claim is either contrary to, or an unreasonable application of, clearly established United States Supreme Court precedent or is an unreasonable determination of the facts. *Early v. Packer*, 537 U.S. 3, 7 (2002).

In his original petition, petitioner raised numerous grounds for relief. In Ground One, petitioner contends that his conviction was obtained by the State's use of "fraudulent intrinsic evidence"; in Ground Two, he alleges that his conviction was obtained through the use of inadmissible evidence; in Ground Three, he contends that his conviction was obtained through the deception of trial counsel combined with ineffective assistance of trial and appellate counsel; in Ground Four, he alleges that his conviction was obtained "through prosecution's retaliation, corruption and conflicting interest"; in Ground Five, petitioner asserts that his conviction was obtained by counsel's waiving his due process rights without his knowledge or consent; in Ground Six, he alleges that the State knowingly used perjured testimony against petitioner; in Ground Seven, he claims that he received ineffective assistance of counsel at the Jackson-Denno hearing and

because of appellate counsel's failure to raise it on appeal; in Ground Eight, petitioner contends that his due process rights were violated pursuant to his Jackson-Denno hearing; in Ground Nine, he argues that he was prevented from assisting in his own defense due to the actions of officials at the Dougherty County Jail Facility where he was held in maximum security while awaiting trial; in Ground Ten, petitioner claims prosecutorial misconduct during the Jackson-Denno hearing; in Ground Eleven, he states that the prosecution improperly submitted evidence; in Ground Twelve, petitioner claims that the trial court committed error by allowing the prosecution to re-open and submit evidence during the Jackson-Denno hearing; in Ground Thirteen, petitioner claims ineffective assistance of trial counsel when counsel failed to leave evidence at the Jackson-Denno hearing instead of leaving it for consideration by the trial court; in Ground Fourteen, he claims that his conviction was obtained while he was incompetent to stand trial; and, in Ground Fifteen, petitioner contends that his conviction was upheld despite several due process violations contained within his state habeas corpus proceedings.

Pursuant to a motion to amend by petitioner (Tab #67), petitioner requested that several of his grounds be dismissed, and that he be allowed to go forward with only Grounds Two, Four, Five, Six, and Fourteen. That motion was granted by the district judge to whom this case is assigned (Tab #82). Therefore, the only Grounds that are considered herein are as follows:

(1) Ground Two: his conviction was obtained through the use of inadmissible evidence;

(2) Ground Four: his conviction was obtained "through prosecution's retaliation, corruption and conflicting interest;

(3) Ground Five: his conviction was obtained by counsel waiving his due process rights without his knowledge or consent;

(4) Ground Six: the State knowingly used perjured testimony against petitioner;

(5) Ground Fourteen: his conviction was obtained while he was incompetent to stand trial.

The Antiterrorism and Effective Death Penalty Act of 1996, signed into law on April 24, 1996, amended Section 2254(d) to provide:

> *An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim*
>
> *(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or*
>
> *(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.*

The United States Supreme Court addressed Section 2254(d) in *Williams v. Taylor*, 529 U.S. 362, 404, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). The Court explained:

> *Section 2254(d)(1) defines two categories of cases in which a state prisoner may obtain federal habeas relief with respect to a claim adjudicated on the merits in state court. Under the statute, a federal court may grant a writ of habeas corpus if the relevant state-court decision was either (1) "contrary to ⋯ clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of ⋯ clearly established Federal law, as determined by the Supreme Court of the United States."*

*Id.* at 404-05 (emphasis added).

The Eleventh Circuit has explained the difference between the "contrary to" and "unreasonable application" clauses in § 2254(d)(1) as follows:

> *A state court decision is "contrary to" clearly established federal law if either (1) the state court applied a rule that contradicts the governing law set forth by Supreme Court case law, or (2) when faced with materially indistinguishable facts, the state court arrived at a result different from that reached in a Supreme Court case. A state court conducts an "unreasonable application" of clearly established federal law if it identifies the correct legal rule from Supreme Court case law but unreasonably applies that rule to the facts of the petitioner's case. An unreasonable application may also occur if a state court unreasonably extends, or unreasonably declines to extend, a legal principle from Supreme Court case law to a new context. Notably, an "unreasonable application" is an "objectively unreasonable" application.*

*Putman v. Head*, 268 F.3d 1223, 1241 (11th Cir.2001) (internal citations omitted). Thus, a habeas corpus petition may be granted if "the state court's decision was contrary to, or involved an objectively unreasonable application of, the governing Federal law set forth by Supreme Court cases." *McIntyre v. Williams*, 216 F.3d 1254, 1257 (11th Cir.2000).

Section 2254(e)(1) sets a highly deferential standard of review for state court factual determinations. "[A] determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." *Fugate v. Head*, 261 F.3d 1206, 1215 (11th Cir.2001) (citations omitted); *see also Crawford v. Head*, 311 F.3d 1288, 1317 (11th Cir.2002) (affirming state court factual determination "because there is support for it in the record and [the petitioner] has not rebutted the finding by clear and convincing evidence"). Moreover, "some evidence suggesting the possibility" that a petitioner's version of the pertinent facts is correct is not sufficient to carry the burden of showing that a state court made an unreasonable determination of fact as contemplated by Section 2254(d)(2). *Bottoson v. Moore*, 234 F.3d 526, 540 (11th Cir.2000). Similarly, a federal court may not simply substitute its judgment for that of the state court. *Woodford v. Visciotti*, 537 U.S. 19, 24-25 (2002). See also *Bell v. Cone*, 535 U.S. 685, 696-697 (2002).

5

The Supreme Court of Georgia made the following findings of fact in petitioner's case on appeal:

> The victim's body was found in his Albany home on Dorsett Avenue on August 11, 1995, after neighbors had not seen him on his front porch where he normally spent a great deal of time. Police found the victim's home to have been ransacked. The medical examiner who performed the autopsy testified the body had sustained over 55 stab wounds and slashes on the head, neck, back, chest, upper arms, and palms. One stab wound had punctured the subclavin vein in the victim's neck and others had punctured his lungs and thoracic aorta, causing the victim to bleed to death. A neighbor testified the victim sold collard greens and cigarettes from his home. A friend of appellant testified appellant came to her home one August morning with a shaving kit full of cigarettes and money and told her he wanted to have a good time because he was going to get "locked up." This witness and a former girlfriend of appellant testified appellant had a deep cut on his hand for which he refused medical attention. The former girlfriend testified that several days after she saw appellant and his wounded hand, appellant threatened to "cut" her "just like [he] cut that old [man] on Dorsett." A bloodstained curtain at the victim's home contained blood from two individuals, and a GBI DNA analyst who ran tests on the stains and known blood samples from appellant and the victim testified the stains were consistent with having been contributed by the victim and appellant. After being arrested and advised of his constitutional rights, appellant gave a 12-page handwritten statement to police and then, over the next several days, made two oral statements that were audiotaped by the investigating officers. A convicted felon with charges pending in Dougherty County notified authorities a week before appellant's 1999 trial that he had information about the case and, at trial, identified appellant as the man he saw running down the steps and around the side of the victim's home the night the victim was killed in 1995. The evidence was sufficient to authorize a rational trier of fact to find appellant guilty beyond a reasonable doubt of malice murder. *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

*Prince v. State,* 277 Ga. at 231-232.

The undersigned will now address the alleged grounds for habeas corpus relief.

*Ground Two: conviction was obtained through the use of inadmissible evidence*

Specifically, petitioner Prince contends that the police did not have probable cause to arrest him; that he was compelled to give his testimony against himself after invoking his Fifth Amendment rights; that his confessions were inadmissible because he requested counsel; and, that his conviction was obtained while he was insane, mildly mentally retarded, with anti-personality disorders, had visual and auditory hallucination and borderline intellectual functioning with poly-substance dependencies[1].

The Supreme Court of Georgia addressed both the probable cause issue and the admissibility of the three confessions that were admitted at trial:

> After holding three hearings at which testimony was given regarding appellant's statements, the trial court found appellant had given four statements and ruled the first statement inadmissible because appellant had invoked his right to counsel, and the statements admitted at trial (the second, third, and fourth statements) admissible because appellant had initiated contact with the investigating officers, had been advised of his rights on each occasion, and had waived his rights freely and voluntarily.
>
> The trial court makes findings of fact and credibility regarding the admissibility of a defendant's inculpatory statements, and those determinations are upheld on appeal unless clearly erroneous. *Perry v. State,* 274 Ga. 236(1), 552 S.E.2d 798 (2001). Inasmuch as the trial court's determinations regarding the admissibility of appellant's statements are supported by the testimony of the investigating officer, the trial court's findings are not clearly erroneous and will not be disturbed on appeal. *Benford v. State,* 272 Ga. 348(2), 528 S.E.2d 795 (2000). Accordingly, appellant's contentions that the statements were inadmissible because they were the product of coercion and because they followed appellant's invocation of his right to counsel are without merit.

---

[1]The undersigned will address petitioner Prince's arguments regarding his mental competency in the discussion of Ground Fourteen.

> Appellant also contends the statements were inadmissible because they were the product of an unlawful arrest not supported by probable cause. See *State v. Harris,* 256 Ga. 24, 343 S.E.2d 483 (1986). Appellant contends he was under arrest when he was brought to the police station for questioning. At trial, the investigating officer testified appellant developed as a suspect from information gathered in canvassing the neighborhood in which both appellant and the victim lived and, prior to bringing appellant to the station for questioning, the officer observed cuts on appellant's hand consistent with having been inflicted by a knife. Assuming there was an arrest, since the arresting officer had knowledge and reasonably trustworthy information sufficient for a prudent person to believe the accused had committed the offense, there was probable cause to arrest. See *Brown v. State,* 262 Ga. 728(2)(a), 425 S.E.2d 856 (1993). Appellant's contention on appeal is therefore without merit.

*Prince, supra* at 232.

The state habeas corpus court also addressed the admissibility of the statements and concluded that the admission of the three statements was not error. The court relied on *Anderson v. State*, 228 Ga. App. 617, which in turn quoted the United Supreme Court case of *Edwards v. Arizona*, 451 U.S. 477, 101 S.Ct. 1880(1981). The [state] court found that petitioner Prince initiated contact with detectives, was advised of his rights, and freely and voluntarily waived those rights on three separate occasions; it found that his statements were given freely and voluntarily, citing and correctly applying *Jackson v. Denno*, 378 U.S. 368, 376 (1964).

The undersigned finds that petitioner has not met his burden; he has failed to demonstrate that the state courts' findings were either contrary to, or an unreasonable application of, clearly established Supreme Court precedent. 28 U.S.C. §§ 2254(d)(1) & 2254(e)(1); *Williams v. Taylor*, 529 U.S. 362, 387-388 (2000).

*Ground Four: his conviction was obtained "through prosecution's retaliation, corruption and conflicting interest*

In this ground petitioner Prince contends that the prosecution was corrupted, that one of his defense counsel previously served as an assistant district attorney with the prosecution and even represented the state at a committal hearing on October 9, 2005 against the petitioner, thereby creating a conflict of interest; and that the prosecution retaliated against petitioner because of testimony he gave in another case that showed the assistant district attorney and narcotics officers in a bad light.

The state habeas corpus court considered and rejected these claims, finding that petitioner Prince had not met his burden and had not put forth any credible evidence to support these claims, and further finding that petitioner had not shown how the alleged misconduct on the part of any of the individuals prejudiced his conduct or violated his constitutional rights in any way.

The undersigned finds that petitioner Prince has submitted no proof of these allegations and has only made conclusory allegations against the prosecution and defense counsel. In fact, a review of the record reveals that petitioner in open court asked to have Mr. Williams represent him and expressly waived the conflict of interest with Mr. Williams in a hearing held November 25, 1998. (Resp. Exhibit 8, p. 248).

*Ground Six: the State knowingly used perjured testimony against Petitioner*

Petitioner Prince alleges that the state knowingly used the false testimony of Detective James Williams, Santiago Bush, and Deloris Peterson. He contends that Det. Williams falsely stated that petitioner became a suspect to the murder by a secret informer who apparently knew petitioner from encounters when both were juveniles in Georgia; that testimony from witness Delores Peterson at the jury trial was false when she stated that she did not know that petitioner was involved with women other than herself. Petitioner also includes a statement from another woman from October of 2005 rebutting the statement from Ms. Peterson; and that the prosecution used false statements from Santiago Bush.

9

However, as stated above, the Supreme Court of Georgia specifically found that the evidence was sufficient to authorize a rational trier of fact to find petitioner guilty beyond a reasonable doubt of malice murder in accordance with *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781 (1979). In *Jackson*, the Supreme Court held that a court in addressing such a claim as insufficiency of the evidence on habeas review should determine whether any rational trier of fact would have found proof of guilt beyond a reasonable doubt. 443 U.S. at 319, 99 S.Ct. at 2789.

Faced with a record of historical facts that supports conflicting inferences, the court must presume that the jury resolved such conflicts in favor of the prosecution, deferring to the jury's judgment as to the weight and credibility of the evidence. See *Jackson*, supra, 443 U.S. at 326, 99 S.Ct. at 2792; *Machin v. Wainwright*, 758 F.2d 1431, 1435 (11th Cir.1985); *Cobb v. Wainwright*, 666 F.2d 966, 971 (5th Cir.), cert. denied, 457 U.S. 1107, 102 S.Ct. 2906, 73 L.Ed.2d 1315 (1982). The simple fact that the evidence gives some support to the defendant's theory of innocence does not warrant the grant of habeas relief. *Wilcox v. Ford*, 813 F.2d 1140, 1143 (11th Cir. 1987), cert. denied, 484 U.S. 925, 108 S.Ct. 287 (1987).

The appellate court applied the proper law to the facts in this case, and the undersigned cannot state that the application was in any way unreasonable given the record.

### *Ineffective Assistance of Trial Counsel (Grounds Five and Fourteen)*

In *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), the Supreme Court created a two-part test for determining whether a defendant received ineffective assistance of counsel. First, a defendant must demonstrate that his attorney's performance was deficient, which requires a showing that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Id.* Second, a defendant must demonstrate that the deficient performance prejudiced the defense to such a degree that the results of the trial cannot be trusted. *Id.*

Under the first prong, the reasonableness of an attorney's performance is to be evaluated from counsel's perspective at the time of the alleged error and in light of all the circumstances. *Strickland,* 466 U.S. at 690. The petitioner must carry a heavy burden, as "reviewing courts must indulge a strong presumption that counsel's conduct falls within the wide range of professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* at 689 (citation omitted).

Under the prejudice prong, a petitioner must establish that there is a reasonable probability that the results would have been different but for counsel's deficient performance. *Kimmelman v. Morrison,* 477 U.S. 365, 375, 106 S.Ct. 2574, 91 L.Ed.2d 305 (1986); *Strickland,* 466 U.S. at 696. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

*Ground Five: his conviction was obtained by counsel's waiving his due process rights without his knowledge or consent*

In this ground petitioner Prince alleges that trial counsel waived petitioner's rights to have the taped confessions and the recording devices analyzed by an independent expert for the defense, and by waiving the competency trial without consent of petitioner.

The state habeas corpus court considered these grounds and determined that petitioner Prince had not met his burden and had not put forth any credible evidence to support his claims. It further found that he had not shown how the alleged misconduct prejudiced his trial or violated his constitutional rights. (Resp. Exhibit 2, p. 7). Moreover, both the appellate court and the state habeas corpus court found that petitioner had received effective assistance of counsel at trial. Both courts properly cited and used the standards set forth in *Strickland, supra*, to conclude that petitioner had received effective assistance of trial counsel, including the issue surrounding petitioner Prince's mental competency, as more fully explored below.

*Ground Fourteen: his conviction was obtained while he was incompetent to stand trial*

In this ground, petitioner Prince contends that he was incompetent to stand trial, and trial and appellate counsel were deficient for failing to raise such at trial and on appeal. The appellate court made findings of fact as to petitioner's mental competency and the failure of trial counsel to use his mental competency at trial and in preliminary hearings.

> Appellant maintains counsel performed deficiently when counsel failed to introduce at trial or during the Jackson-Denno hearing evidence of appellant's mental incapacity....... At the hearing on appellant's motion for new trial, appellant introduced a copy of a psychiatric report on appellant. In the report dated March 18, 1997, a psychiatrist opined that appellant was "in a state of cocaine intoxication and had perceptual disturbance that would fall under the legal term of insanity" both before and after the victim's murder, and that "there was and still is a brain dementia, cocaine related, that accounts for his strange confession and denial of the murder."
>
> Appellant's trial counsel testified at the hearing that the psychiatrist and the report were not used at trial because the defense, after consulting with appellant, was proceeding under a theory of innocence rather than mental illness. Trial counsel characterized the presentation of evidence of mental illness while contending appellant did not commit the crime as "an insult to the jury" that would have "muddied the water."
>
> It is undisputed that appellant entered a plea of not guilty after consulting with his attorneys. Counsel's decision not to use evidence of appellant's purported cocaine intoxication that conflicted with appellant's plea of not guilty is a matter of trial strategy within the exclusive province of the lawyer after consultation with the client, and falls within the bounds of reasonable professional conduct. See *Jenkins v. State*, 268 Ga. 468 (10) (491 S.E.2d 54) (1997). The trial court did not err when it determined that trial counsel's decision not to use the psychiatric evidence did not constitute ineffective assistance of counsel.
>
> Trial counsel testified on the motion for new trial that he could not speak to the failure to use the psychiatric opinion at the Jackson-Denno hearing because he did not represent appellant at the time of the Jackson-Denno hearing. Trial co-counsel, who was a member of the defense team at the time of the Jackson- Denno hearing, testified she had not been aware of the existence of the psychiatric report until the day before the hearing on the motion for new trial. Trial counsel at the time of the Jackson-Denno hearing who might have known about the psychiatric report did not testify on the motion for new trial. Consequently, appellant did not make the necessary affirmative showing that the failure to use the psychiatric report at the Jackson-Denno hearing was deficient performance on the part of trial counsel and not the result of conscious and deliberate trial strategy. *Morgan v. State*, 275 Ga. 222 (10) (564 S.E.2d 192) (2002). Since appellant did not overcome the strong presumption that trial counsel's conduct fell within the broad range of reasonable professional conduct, the trial court did not err when it concluded appellant had not carried his burden of establishing ineffective assistance of counsel.

*Prince, supra*, at 233.

The state habeas corpus court also considered the issue of ineffective assistance of counsel. (Resp. Ex. 2, p. 10). The state habeas corpus court made findings of fact based upon the record:

> Counsel also gave consideration to a mental defense. The petitioner was mentally evaluated by three experts. While one of the experts believed the petitioner suffered from memory loss due to cocaine intoxication and perpetual disturbances, two experts stated that defendant understood his proceedings, could assist in the defense, and was looking out for his own best interests when he claimed to have memory loss. Counsel testified that based on all the circumstances, including conflicting expert opinions, a mental defense did not fit within the best trial strategy, which was to argue innocence. At trial, the defense theory was to discredit the witnesses and to attack the credibility of the police officers who took the statements from the petitioner.

(Resp. Ex. 2, p. 2).

The state habeas corpus court cited and applied *Strickland* and concluded that trial counsel's performance was reasonable considering all of the circumstances. Strategic decisions constitute constitutionally ineffective assistance only if so "patently unreasonable" that no competent attorney would have chosen them. *Kelly v. United States*, 820 F.2d 1173, 1176 (11th Cir. 1987). The state habeas court concluded "[t]his Court finds nothing patently unreasonable in the way trial counsel conducted the hearing. Further, the petitioner has failed to show how any alleged deficient performance during this hearing prejudiced his defense. Accordingly, this ground is without merit." (Resp. Ex. 2, p. 11).

The state habeas corpus court further held that petitioner had received effective assistance of appellate counsel:

> The petitioner has failed to point out any other potentially significant grounds that appellate counsel failed to raise. After reviewing the trial transcript, this Court finds that appellate counsel raised all obvious issues on appeal, and he did not ignore any issue which would be more significant than the issues he raised. Additionally, appellate counsel's performance in this case was no less effective than that of any competent attorney in the same situation. Accordingly, the petitioner has failed to overcome the presumption of effective assistance of counsel in this case.

(Resp. Ex. 2, p. 13).

The state habeas corpus court used the analysis set out in *Strickland*, *supra*, in determining that petitioner had received effective assistance of counsel on appeal. In *Smith v. Robbins*, 528 U.S. 259, 285 (2000), and *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000), the Supreme Court held that Strickland applies to claims that counsel was constitutionally ineffective in failing to file an appellate brief or in failing to file a notice of appeal.

The Supreme Court has previously recognized that appellate counsel has no constitutional duty to raise every non-frivolous claim requested by his client, as the hallmark of effective appellate advocacy often involves a process of "winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues." *Jones v. Barnes*, 463 U.S. 745 (1983). In order to show ineffective assistance, Petitioner has the burden to show both attorney error and actual prejudice. *Strickland*, 466 U.S. at 687, 694. The state habeas corpus court correctly determined that petitioner failed to satisfy this burden.

*Conclusion*

In conclusion, the undersigned finds that petitioner Prince has not met his burden in showing that he is entitled to habeas corpus relief. He has not shown that the state courts' adjudication of his constitutional claims is either contrary to, or an unreasonable application of, clearly established United States Supreme Court precedent or is an unreasonable determination of the facts. *Early v. Packer*, 537 U.S. 3, 7 (2002). Therefore, IT IS RECOMMENDED that Prince's petition be **DENIED**.

Pursuant to 28 U.S.C. § 636(b)(1), the parties may file written objections to these recommendations with the Honorable W. Louis Sands, United States District Judge, **WITHIN FOURTEEN (14) DAYS** of receipt thereof.

SO RECOMMENDED, this 19th day of FEBRUARY, 2010.



CLAUDE W. HICKS, JR.
UNITED STATES MAGISTRATE JUDGE

msd